UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   NOAH SAPIR,                                    No. 23-10443-j11

Debtor.

## **MEMORANDUM OPINION**

Debtor Noah Sapir (the "Debtor") seeks relief from the automatic stay to pursue his appeal of a New York state trial court judgment against him in favor of the Bechem Creditors,[1] in an amount over $6.8 million. The Bechem Creditors assert the request for relief from stay should be denied because the Debtor has failed to show he is more likely than not to succeed on appeal, which is a necessary requirement for stay relief to prosecute the appeal; and argue further that the record demonstrates the appeal has no likelihood of success. The Debtor counters that he likely will succeed in the appeal but need only show a colorable prospect of success on appeal to obtain stay relief.

Although both parties rely on *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865 (10th Cir. 2011),[2] for the reasons stated below this Court distinguishes *Gindi* on the basis that *Gindi* applies only to a *creditor's* motion for relief from the stay to prosecute an appeal, not as here to a *debtor's* stay motion. The Court concludes after considering all relevant factors that it is appropriate to grant stay relief to permit the Debtor to pursue his state court appeal.

## PROCEDURAL HISTORY

On July 19, 2023, the Debtor filed *Debtor's Motion to Modify the Automatic Stay to Allow Debtor to Pursue State Court Appeal* (the "Stay Motion" – Doc. 38). The Bechem

---

[1] The "Bechem Creditors" consist of: Jennifer Bechem, Brendan Burke, Liam Bush, Rigdzin Collins, Jenny Cruz, Penelope Cruz, Renee Cruz, Vanessa Cruz, Alexis David, Querlim Franco, Mieko Gavia, Stephanie Henriquez, Kerri Kender, Kamila Narewska, Lily Nunez, Jose Perez, Angel Pimentel, Stephanie Pon, Alexander Rubin, and Anthony Thambynayagam.

[2] *Overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

Creditors filed an objection to the Stay Motion (the "Objection" – Doc. 48), and the Court held an evidentiary hearing on December 14, 2023. The parties stipulated to the admission of all exhibits for the sole purpose of the hearing on the Stay Motion. Following the hearing, the Court set a post-hearing briefing schedule. *See* Doc. 95. The parties each filed a post-hearing brief (Docs. 100 & 104), and the Debtor filed a reply to the Bechem Creditors' post-hearing brief on March 18, 2024 (Doc. 107). In addition to the evidentiary hearing and post-hearing briefing, the length of time between the filing of the Stay Motion and this decision is in part due to the parties stipulating to multiple extensions of time, *see, e.g.*, Docs. 66 & 103, the time needed to obtain records from the New York court, *see* Doc. 56, and the coordination required with the Debtor's New York counsel, *see* Docs. 58 & 96.

### FINDINGS OF FACT[3]

The Court makes the following findings on a summary basis solely for the limited purpose of deciding the Stay Motion. In 2014, the Bechem Creditors filed an action in New York state court against the Debtor; his business partner, Charles Berg; and the Debtor and Berg's company, Feldor Billiards, Inc. d/b/a Fat Cat Billiards ("Fat Cat")—the lawsuit is *Vincente Toribio et al. v. Feldor Billiards, Inc. d/b/a Fat Cat Billiards et al.*, Index No. 153384/2014 (the "NY State Court Action") in the Supreme Court of the State of New York, New York County (the "NY Trial Court").[4] In the NY State Court Action, the Bechem Creditors asserted that the Debtor and his co-defendants violated the New York Labor Law ("NYLL") by failing to

---

[3] At the final hearing on the Stay Motion, without objection, the Court took judicial notice of the dockets and the documents on the docket in the following cases: (1) this bankruptcy case (Case No. 23-10443-j11), (2) the NY State Court Action (as defined below), accessed via https://iapps.courts.state.ny.us/iscroll/, and (3) the Debtor's First Appeal (as defined below), accessed via https://iapps.courts.state.ny.us/nyscef/CaseSearch. The Court hereby takes judicial notice of the docket and documents on the docket in the Second Appeal (as defined below), accessed via the same website as the First Appeal.

[4] The trial courts in the State of New York are referred to as supreme courts.

pass along gratuities to Fat Cat's employees from July 2008 through July 2014 (the "Dispute Period").

1. *The Partial Summary Judgment*

On October 27, 2020, the NY Trial Court issued its *Decision and Order on Motion* granting partial summary judgment on liability in favor of the Bechem Creditors (the "Partial Summary Judgment" – Exhibit C). Among other things, the Partial Summary Judgment found that prior to July 2008, tip-eligible employees at Fat Cat were paid $8 to $10 per hour, plus their share of customer tips received and pooled during their shifts. Ex. C at p. 2 of 13. "Beginning around July 2008, Fat Cat changed its compensation structure. Pursuant to the new scheme, each tip-eligible employee's hourly rate varied between $25 to $40 depending on their position and shift[.]" *Id.* (internal citations omitted). While Fat Cat continued to collect tips from customers, no records were kept regarding the amount of tips collected. *Id.* at p. 3 of 13.

The Partial Summary Judgment determined that "[t]here is no triable issue of fact that Defendants, or anyone on their behalf, ever actually tracked the tips received in the tip jars and on credit-card slips." Ex. C at p. 7 of 13. The NY Trial Court determined,

> [D]efendants fail to raise an issue of fact regarding their acceptance and improper retention of all the gratuities intended for its employees between July 2008 and July 2014. Their payments to Plaintiffs were based on projections and not on actual tip receipts.
>
> Crucially, Defendants do not argue—and the evidence does not create a genuine issue of triable fact—that any of Plaintiffs waived their share of pooled tips by contract or by operation of any other doctrine. Contrary to defendants' arguments, Plaintiffs demonstrated, as a matter of law, that Defendants violated [NYLL] § 196-d. The questions that Defendants raise all go to the proper award of damages.

*Id.* at p. 8 of 13 (internal citations omitted). Therefore, the NY Trial Court granted partial summary judgment and found as a matter of law that:

(1) [D]efendant Sapir was an employer of the Plaintiffs for purposes of the NYLL;
(2) [B]etween July 2008 and July 2014, Sapir and Fat Cat collected customer gratuities and failed to disburse them to Plaintiffs;

-3-

(3) [B]etween July 2008 and July 2014, each of [the] Plaintiffs were tip-eligible, excluding [two employees] as to whom there remains a triable issue of material fact over their tip-eligibility during this timeframe; and

(4) [B]etween July 2008 and July 2014, defendants failed to submit paystubs in violation of NYLL § 195(3) and have failed to prove the defense of "complete and timely payment of all wages due" for any pay periods in which Plaintiffs were eligible to receive tips[.]

Ex. C at p. 12 of 13.

2. *The First Appeal*

The Bechem Creditors assert, and the Debtor appears to agree, that the Debtor filed a previous appeal of the Partial Summary Judgment which was dismissed for failure to prosecute the appeal. However, the Court's review of the docket and documents filed on the docket in the NY State Court Action reveals this is not accurate. The only notice of appeal from the Partial Summary Judgment—other than the appeal at issue in the Stay Motion—was filed solely by Fat Cat. *See* Doc. 611 in the NY State Court Action. On November 27, 2020, Fat Cat filed its notice of appeal, initiating *Vincente Toribio et al. v. Feldor Billiards, Inc. d/b/a Fat Cat Billiards et al.*, Case No. 2020-04804 in the First Appellate Division of the Supreme Court of the State of New York (the "First Appeal"). That same day, the Debtor and Fat Cat jointly filed a notice of motion to reconsider certain findings made in the Partial Summary Judgment (Doc. 609 in the NY State Court Action), but the Debtor did not join in the notice of appeal.

In the First Appeal, Fat Cat appealed "each part of the Court's entire [Partial Summary Judgment] that is adverse to [Fat Cat]." Doc. 1 in the First Appeal. Ultimately, the First Appeal was not dismissed for failure to prosecute, but instead Fat Cat withdrew its notice of appeal. *See* Doc. 3 in the First Appeal.

3. *The Trial on Damages and Decision After Trial*

On August 8-18, 2022, the NY Trial Court conducted a trial on damages. Following the trial, the NY Trial Court issued a *Decision After Trial* (the "Decision After Trial" – Exhibit D).

-4-

At the trial, the Bechem Creditors presented evidence, including an expert witness, who provided an estimate of gratuities collected during the Gratuities Period based on employee hours worked. The NY Trial Court found that "plaintiffs presented a clear and compelling factual record based on admissible evidence demonstrating the amounts that they are owed." Ex. D at p. 2 of 8. "By contrast, Sapir did not submit any relevant credible evidence, testimony or arguments on damages. His one-page direct-testimony affidavit is devoid of any useful information, aside from vouching for the accuracy of [Fat Cat's] records on which plaintiffs rely [such as employee hours worked]." *Id.* The Debtor retained an expert witness but did not call him at trial.

The Decision After Trial awarded damages against the Debtor in an amount over $6.8 million principally based on his violation of NYLL § 196-d. At the trial, the Debtor attempted to argue that, in calculating damages, the NY Trial Court should offset the estimate of gratuities collected during the Dispute Period by the increase in the Bechem Creditors' wages during that same timeframe. However, the NY Trial Court determined that such argument had already been rejected in the Partial Summary Judgment:

> Sapir's attempts to again proffer defenses to liability (e.g., plaintiffs' waiver or having been paid more under the illegal compensation policy) are unavailing as they were already rejected before trial (*see* Dkt. 603 at 8-11). Despite being repeatedly cautioned not to do so, Sapir made the strategic decision to principally focus his time at trial on trying to develop a factual basis for these already-rejected legal theories.

Ex. D at p. 3 of 8. The Decision After Trial also awarded damages based on the Debtor's violation of NYLL § 195(3) for failure to provide accurate wage statements.

The NY Trial Court entered its *Judgment* based on the Decision After Trial on March 15, 2023 (the "Judgment" – Exhibit E). The Judgment does not reduce the awarded damages by any part of the increased wages and includes an award of attorney's fees for the Bechem Creditors' counsel. In addition to the Bechem Creditors, the Judgment awards damages and attorneys' fees

to another plaintiff, Vincente Toribio (together with the Bechem Creditors, the "NY Judgment Creditors").

### 4. *Attachment of the Debtor's Bank Account*

On August 18, 2022 (the last day of trial), the NY Trial Court entered an attachment order (Exhibit F) against a bank account owned by the Debtor (the "Merrill Lynch Account"). The order provides that "$800,000 in Sapir's Bank of America account ending 4698 shall not be transferred such that Sapir shall not permit that account balance to fall below that amount." Ex. F.

### 5. *The Second Appeal*

On April 13, 2023, the Debtor filed the notice of appeal initiating the appeal which he now seeks stay relief to pursue—the appeal is *Vincente Toribio et al. v. Noah Sapir*, Case No. 2023-02377 in the First Appellate Division of the Supreme Court of the State of New York (the "Second Appeal"). The notice of appeal for the Second Appeal states that the Debtor is appealing the Judgment and that he appeals from "each and every part of that judgment and from the whole thereof." Doc. 1 in the Second Appeal.

The Debtor specifically intends to challenge the NY Trial Court's failure to give him "credit" for the increase in the Bechem Creditors' wages during the Dispute Period. His primary argument is that the increased wages should have been taken into account as part of the calculation of damages; alternatively, he argues that the increased wages are a defense to liability.

With respect to the calculation of damages, the Debtor asserts that the NY Trial Court erred in its decision not to offset the estimated amount of gratuities collected during the Dispute Period by the increase in the Bechem Creditors' wages during that same timeframe (the "Offset Theory"). The Debtor argues that NYLL only allows recovery of any *underpayment*, and to the

-6-

extent the Bechem Creditors' wages were higher in lieu of their receiving gratuities, that reduces the amount by which they were underpaid. Thus, the Debtor asserts that the NY Trial Court erred by not reducing the damages award by the increase in the Bechem Creditors' wages during the Dispute Period (the "Offset Amount").[5]

In the alternative, with respect to the determination of liability, the Debtor argues that the NY Trial Court erred in its decision that the increase in the Bechem Creditors' wages during the Dispute Period was not a defense to liability under NYLL § 196-d. The Debtor argues that the NY Trial Court erred in finding liability for failure to remit gratuities for two reasons: first, that NYLL permits payment of higher wages in lieu of gratuities, and second, that the Offset Theory is a defense to liability apparently on the theory if there was no underpayment there was no liability.

The Debtor's mother is paying for the Debtor's legal fees and other costs for the Second Appeal.[6] Neither the Debtor nor the bankruptcy estate will bear any financial responsibility for the cost of the Second Appeal.

6. *The Bankruptcy Case*

The Debtor filed this bankruptcy case on June 6, 2023, and it is a chapter 11 subchapter V case. The bankruptcy case primarily is a "two-party" dispute between the Debtor and the NY Judgment Creditors—considering the NY Judgment Creditors as a collective "party" since their interests are aligned in seeking to uphold the Judgment.

---

[5] The Debtor represented at the final hearing on the Stay Motion that he is not appealing any portion of the Partial Summary Judgment that relates to failure to provide accurate wage statements, although the Court notes that the notice of appeal is from all aspects of the Judgment. However, whether the Debtor pursues that portion of his appeal is not material to the question of whether this Court should modify the automatic stay to allow the Second Appeal to proceed.

[6] *See* Doc. 129 (supplementing the Debtor's application to employ special counsel for the Second Appeal).

-7-

The claims bar date was August 28, 2023. Other than the NY Judgment Creditors, proofs of claim were filed by the Internal Revenue Service ($69,013),[7] Bernalillo County Treasurer ($2,390), and Jefferson Capital Systems ($115). One other creditor was scheduled with a claim not listed as contingent, disputed, or unliquidated: Rio Arriba County Treasurer ($169). These claims total **$71,687**.

Meanwhile, the NY Judgment Creditors filed proofs of claim totaling **$6,840,418** (the "Judgment Debt"), comprised of $5,533,100 by the Bechem Creditors and their counsel and $1,307,318 by Mr. Toribio, the other NY Judgment Creditor.[8]

The Debtor filed his subchapter V plan on September 5, 2023. *See* Doc. 59. The plan has four classes of claims: (1) class 1 is priority tax claims, which the plan states are unimpaired, (2) class 2 is secured property tax claims, for which the claimants shall retain their liens and be paid from the sale or refinance of the respective properties, (3) class 3 is the NY Judgment Creditors, which the plan states is a disputed claim and for which it provides alternate treatment depending on the outcome of the Second Appeal, and (4) class 4 is nonpriority, unsecured claims, which shall be paid a *pro rata* amount of the Debtor's payments into the plan. *Id.* at pp. 6-7 of 17. With respect to the NY Judgment Creditors (defined as the "New York Plaintiffs" in the plan), the plan provides that:

 i. To the extent the New York Plaintiffs prevail on appeal and have been determined to have a valid, nonavoidable lien upon the Merrill Lynch Account, then the funds in the Merrill Lynch Account will be paid over to the Class 3 Creditors up to the amount specified in the Final, Non-appealable Judgment. The unsecured portion, if any, shall be treated as a Class 4 Claim.

 ii. To the extent the New York Plaintiffs prevail on appeal but have been determined to not have a valid, nonavoidable lien upon the Merrill Lynch Account, then the Class 3 claimants shall be treated under Class 4. Funds in the Merrill Lynch

---

[7] For purposes of this opinion, proof of claim amounts are rounded to the nearest dollar.

[8] Mr. Toribio's proof of claim was filed in the name of his counsel, Borrelli & Associates, PLLC, as Claim No. 25.

Account will [be] used to fund payments to Class 1 claimants to the extent they have not been paid, then to fund payments to Class 4 claimants.

iii.   If the New York Plaintiffs are determined to have no claims against the Debtor, then the Merrill Lynch Funds shall be used to pay remaining claims in accordance with this Plan, with any surplus going to the Debtor.

*Id.* at p. 7 of 17. The outcome of the Second Appeal will therefore have a significant impact on the Debtor's plan. While the Debtor's request for stay relief has been pending, the Court did not set a confirmation hearing on the Debtor's proposed plan, nor fix confirmation-related deadlines for parties to file objections and vote on the plan.

The liquidation analysis attached to the plan shows that Debtor has $1,037,608 in non-exempt equity in property,[9] although the Bechem Creditors assert that they have a perfected lien in the Merrill Lynch Account which is not reflected in the liquidation analysis. Outside of the Merrill Lynch Account, it appears the Debtor has $196,617 in non-exempt equity in real property, after deducting $2,383 in secured claims and a $60,000 homestead exemption; $5,800 in non-exempt equity in vehicles, after deducting a $4,000 vehicle exemption; and $2,273 in non-exempt equity in a Bank of America bank account.

Pursuit of the Second Appeal will delay the administration of the estate. The primary parties impacted by the delay will be those who are parties to the appeal itself.

DISCUSSION

The Debtor seeks stay relief to pursue his New York appeal of the judgment against him. That issue is governed by § 362(d)(1),[10] which allows the Court to grant a party relief from the automatic stay for "cause." Whether "cause" for relief from the automatic stay under § 362 exists is a "discretionary determination made on a case-by-case basis." *Carbaugh v. Carbaugh (In re*

---

[9] For purposes of this opinion, asset values and claim amounts are rounded to the nearest dollar.

[10] Unless otherwise specified, references to "section" and "§" are to sections of the Bankruptcy Code, which is title 11 of the United States Code.

*Carbaugh),* 278 B.R. 512, 525 (10th Cir. BAP 2002) (citing *Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir. 1987)); *In re Blair*, 534 B.R. 787, 792 (Bankr. D.N.M. 2015) (same).

"[A] relief from stay proceeding is by its nature a cursory or summary proceeding[.]" *G&B Aircraft Mgmt. v. Smoot (In re Utah Aircraft Alliance)*, 342 B.R. 327, 332 (10th Cir. BAP 2006). The burden of proof on all issues in this matter rests with the Bechem Creditors as the party opposing relief from the stay. 11 U.S.C. § 362(g).

Generally, when a party requests relief from the automatic stay to continue litigation in a non-bankruptcy forum, relevant factors to the Court's determination of "cause" include the "*Curtis* factors." *In re Curtis,* 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). Before examining these and other relevant factors, however, the Court must consider whether likelihood of success on the merits is a threshold factor.

    1. *Whether* Gindi *requires a showing that the Debtor is likely to succeed on appeal for the Debtor to obtain stay relief.*

In the Tenth Circuit, with respect to a creditor's motion for relief from stay, "one factor that can be dispositive in determining whether a party can successfully move for relief from the automatic stay under § 362(d)(1) . . . [is] the likelihood that the movant would prevail in the litigation if the stay were lifted." *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).[11] The *Gindi* court stated:

> Persuaded by the broad adoption of the likelihood-of-success factor by
> bankruptcy courts, and following our opinion in *Vescor Capital,* we hold that the

---

[11] *TW Telecom Holdings* overruled *Gindi* with respect to whether the automatic stay applies to an appeal by a bankruptcy debtor of a creditor's judgment against the debtor. *Gindi* itself recognized that the rule that the stay does not apply in such circumstances likely should be overturned, but declined to do so because the Colorado appeals court had already resolved the appeal: "We therefore will follow *In re Lyngholm* on this appeal; but the bankruptcy courts in this circuit may wish to rule in the alternative when the issue arises in future cases." *Gindi*, 642 F.3d at 876 (citing *Chaussee v. Lyngholm (In re Lyngholm)*, 24 F.3d 89 (10th Cir. 1994)).

bankruptcy court should have lifted the stay under § 362(d)(1) only if Chizzali showed that his appeal was likely to succeed. (We leave for another day whether to adopt an all-inclusive test incorporating other factors.)

*Gindi*, 642 F.3d at 873.[12] In *Gindi*, a creditor moved for relief from the stay to prosecute an appeal. This Court determines that likelihood of success on appeal is not a dispositive requirement for stay relief to prosecute an appeal when, as here, the debtor is the party moving for relief from stay.

In *Gindi*, the Tenth Circuit Court of Appeals analogized bankruptcy to a receivership. In the context of a receivership, the Tenth Circuit had recently adopted a three-factor test to determine whether to grant relief from the stay of litigation imposed by the court in the receivership proceeding that included as a factor "the merits of the moving party's underlying claim." *Gindi*, 642 F.3d at 872-73 (citing *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1196 (10th Cir. 2010)). For receiverships:

> [T]he purpose of imposing a stay of litigation is clear. A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant. Nevertheless, an appropriate escape valve, which allows potential litigants to petition the court for permission to sue, is necessary so that litigants are not denied a day in court during a lengthy stay.

*Gindi*, 642 F.3d at 873 (quoting *Vescor Capital*, 599 F.3d at 1196). *Gindi* reasoned that such "assessment of the purpose of the stay and the possible countervailing interests would apply in the bankruptcy context as well." *Id.*

This reasoning does not apply, however, if the receiver seeks to pursue an appeal. Such appeal would not impede the receiver doing her job; indeed, pursuit of appropriate appeals would be part of fulfilling her duties as receiver. Similarly, the Debtor's request to pursue the Second Appeal seeks benefit to the bankruptcy estate by attempting to reduce the amount of the

---

[12] Citing *SEC v. Vescor Capital Corp.*, 599 F.3d 1189 (10th Cir. 2010).

Judgment Debt, not to impede the Debtor from fulfilling his responsibilities as the representative of the bankruptcy estate. Therefore, *Gindi* does not require the Debtor to show that his appeal is likely to succeed in order to obtain stay relief.[13]

      2.   *Futility would be a dispositive factor, but the Debtor's appeal is not futile.*

Although the Debtor need not show his appeal is likely to succeed on the merits as a threshold matter, the Bechem Creditors go beyond arguing that the appeal is not likely to succeed and assert that the appeal is futile. Not surprisingly, the Debtor disagrees. Consistent with *Gindi*, this Court concludes that the merits of the underlying claim on appeal is a dispositive factor to deny stay relief to prosecute the appeal if there is no realistic possibility the debtor will prevail in his appeal. A futile appeal would cause delay and expense[14] without serving any useful purpose. For the reasons explained below, the Court determines that the Debtor's appeal is not futile.

      a.   *Relevant New York labor law provisions*

In order to evaluate the parties' assertions regarding the futility of the Debtor's appeal, the Court must look to the New York Labor Law provisions at issue in the NY State Court Action. Per the NYLL,

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.

N.Y. Labor Law § 196-d (McKinney). With respect to damages, NYLL provides:

---

[13] Since *Gindi* does not apply to a debtor seeking relief from stay, the Court need not decide whether *Gindi* requires a creditor seeking relief from stay to pursue an appeal to show as a threshold matter that its appeal is more likely than not to succeed to establish "cause" for stay relief to prosecute its appeal.

[14] The appeal would not result in expense to the Debtor or to the bankruptcy estate because the Debtor's mother would pay the cost of the appeal, but it would result in expense to the Bechem Creditors and the Debtor's mother.

-12-

In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any *underpayment*, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

N.Y. Labor Law § 198(1-a) (McKinney) (emphasis added).

b. *The Debtor's appeal is not futile.*

The Bechem Creditors contend that an appeal would be futile for two reasons: (1) the Debtor already filed an appeal from the Partial Summary Judgment, which was dismissed for failure to prosecute the appeal, and New York law bars a second appeal in such circumstances, and (2) the Debtor is unable to appeal damages because he failed to present any evidence of damages at trial. The Court will address each of these contentions.

This Court understands the issues before the NY Trial Court to have consisted of, or at least included, the following: (a) is Fat Cat liable under NYLL for failing to pass along gratuities to Fat Cat's employees during the Dispute Period and failing to provide accurate wage statements; (b) if Fat Cat is liable, is the Debtor also liable; and (c) the amount of damages. The Debtor challenges both the determination of liability in the Partial Summary Judgment and the award of damages in the Decision After Trial, on account of the increased wages paid to the NY Judgment Creditors.

i. *The Second Appeal is not barred by New York law.*

With respect to their first argument, the Bechem Creditors cite *Rubeo v. Nat'l Grange Mut. Ins. Co.*, 93 N.Y.2d 750 (N.Y. 1999) for the proposition that New York law bars a second

appeal where a first appeal was dismissed for failure to prosecute the appeal.[15] In *Rubeo*, New York's highest court considered a plaintiff who filed a second appeal where his first appeal on the same issue was dismissed for failure to prosecute the appeal. *Rubeo* explained the reasons why a second appeal should not be entertained in such circumstances. It held that, "[T]he issue here, as in *Bray*, is whether, having decided to file both appeals, plaintiff had the right to pursue the second appeal after allowing the first to die on the vine. Clearly, he did not." *Rubeo*, 93 N.Y.2d at 755 (citing *Bray v. Cox*, 38 N.Y.2d 350 (N.Y. 1976)).

The argument that *Rubeo* bars the Second Appeal fails for two reasons. First, the Bechem Creditors have not established the factual predicate that the Second Appeal is an appeal of the same issue(s) as a first appeal that was dismissed for failure to prosecute the appeal. The First Appeal in this case was filed by Fat Cat, not the Debtor, and was withdrawn, not dismissed for failure to prosecute.

Second, even if the Second Appeal were an appeal of the same issue(s) as a first appeal that was dismissed for failure to prosecute the appeal, New York law does not necessarily bar an appeal in such circumstances. The same day that New York's highest court issued the *Rubeo* decision, it also issued a decision in *Faricelli v. TSS Seedman's, Inc.*, 94 N.Y.2d 772 (N.Y. 1999).[16] In *Faricelli*, the appellant had filed a first appeal, which was dismissed for failure to prosecute the appeal. Then appellant filed a second appeal, which the appellate court allowed to proceed. The highest court upheld the appellate court's decision to allow the appeal to proceed. *Faricelli* provided that, "[A]n appellate court has the authority to entertain a second appeal in the exercise of its discretion, even where a prior appeal on the same issue has been dismissed for

---

[15] The parties do not dispute that the Debtor had the right to file an appeal from the Partial Summary Judgment.

[16] Both opinions were issued October 14, 1999.

failure to prosecute[.]" *Faricelli*, 94 N.Y.2d at 774.

This Court reconciles *Rubeo* and *Faricelli* as follows: while *Rubeo* stands for the proposition that a second appeal is discouraged where the appellant filed a first appeal on the same issue that was dismissed for failure to prosecute, and that an appellant does not have a *right* to proceed with the second appeal in such circumstances, *Faricelli* stands for the proposition that an appellant *may* proceed with a second appeal in such circumstances *at the appellate court's discretion*. Therefore, in this case, even if the Second Appeal were an appeal of the same issue(s) as a first appeal that was dismissed for failure to prosecute the appeal, which does not appear to be so, New York law discourages but does not necessarily bar a second appeal in such circumstances.[17]

ii.   *The Debtor is not unable to appeal damages based on a failure to present relevant evidence at trial.*

The Bechem Creditors argue that the Debtor is unable to appeal the NY Trial Court's determination of damages because he failed to present any competing evidence of damages at trial. The Debtor initially argued at the final hearing on the Stay Motion that he was not permitted to present evidence of the Offset Amount because the NY Trial Court determined that the Offset Theory was foreclosed by the Partial Summary Judgment, and that it was the Bechem Creditors' burden to prove the amount of their *underpayment*, which would be the estimated amount of gratuities minus the Offset Amount. In his post-trial briefing, the Debtor argues that sufficient evidence was presented at the damages trial for the NY Trial Court to calculate the

---

[17] The Debtor argues that New York appellate courts are more likely to permit a second appeal to proceed where (1) the appeal raises an important question, (2) there is additional evidence between the first decision and the second decision, and (3) declining to allow the appeal could lead to inequitable results—and that such factors are all present here. Since it appears that the Second Appeal is not a subsequent appeal where a first appeal on the same issue was dismissed for failure to prosecute the appeal, this Court need not reach these issues.

-15-

Offset Amount, but the court did not do so.

The Offset Theory, properly understood, is that, assuming liability, the NY Trial Court should have awarded damages in an amount that is the difference between (x) the sum of the amount of gratuities Fat Cat did not pass along to it employees as required by NYLL and any other amounts recoverable by Plaintiffs and (y) the amount of additional wages Fat Cat paid the employees in lieu of the gratuities.

It appears from the record before this Court that the NY Trial Court admitted evidence of the alleged Offset Amount presented by Debtor at trial but found that evidence to be irrelevant because it rejected the Offset Theory.[18] Whether the evidence was relevant is an issue for the Second Appeal.

### iii  *The Second Appeal is not futile.*

It appears to this Court that the Debtor's Offset Theory presents at least a colorable claim on appeal. The Debtor's argument that Fat Cat increased wages at the same time that it implemented the policy of withholding gratuities, and that such increase should reduce the amount of awardable damages, is plausible. And there is at least one unreported disposition by a New York trial court entertaining the Debtor's interpretation of how the court should calculate damages where an employer raises employee wages while simultaneously withholding gratuities: *Picard v. Bigsbee Enters., Inc.*, No. 1984-13, 2017 WL 2372018 (N.Y. Sup. Ct. May 23, 2017).[19]

---

[18] The Decision After Trial states:

> Sapir's attempts to again proffer defenses to liability (e.g., plaintiffs' waiver or having been paid more under the illegal compensation policy) are unavailing as they were already rejected before trial (*see* Dkt. 603 at 8-11). Despite being repeatedly cautioned not to do so, Sapir made the strategic decision to principally focus his time at trial on trying to develop a factual basis for these already-rejected legal theories.

Ex. D at p. 3 of 8.

[19] In *Picard v. Bigsbee*, the New York trial court stated, in denying plaintiffs' request for summary judgment on damages that "the Court shares defendants' concern that the measure of damages requested by plaintiffs exceeds their actual damages. It seems inconceivable that defendants would have paid their

In light of this, the Debtor's appeal is not futile.

### 3. *Other relevant factors in determining whether "cause" exists.*

Having determined that futility does not dispositively determine this case, the Court now considers other factors relevant to the Court's determination of "cause." Many courts consider the "*Curtis* factors" in determining whether "cause" exists to lift the stay to pursue litigation in another forum, set forth in *In re Curtis,* 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).[20, 21]

---

banquet servers as much as $14 per hour if the servers also were to receive a mandatory 20% gratuity." *Picard v. Bigsbee*, 2017 WL 2372018, at *10.

[20] *See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990) (adopting the *Curtis* factors but stating them slightly differently); *In re McConathy*, No. 90-13449, 2021 WL 2405734, at *7 (Bankr. W.D. La. June 14, 2021) (applying the *Sonnax* factors); *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (applying the *Curtis*/*Sonnax* factors)*; In re SCO Group, Inc*., 395 B.R. 852, 857 (Bankr. D. Del. 2007) (applying the *Sonnax* factors); *see also Busch v. Busch (In re Busch),* 294 B.R. 137, 141 (10th Cir. BAP 2003) (noting that "[t]he *Curtis* factors have been widely adopted by bankruptcy courts").

[21] The Court weighs the *Curtis* factors as follows:

(1) **Whether the relief will result in a partial or complete resolution of the issues**—N/A. The issues have already been resolved at the trial level by the NY Trial Court.

(2) **The lack of any connection with or interference with the bankruptcy case**—The appeal does not have any connection to the bankruptcy case, other than that the Debtor is seeking to reduce the amount of the NY Judgment Creditors' allowed claims against the bankruptcy estate.

(3) **Whether the foreign proceeding involves the debtor as a fiduciary**—The Second Appeal involves the Debtor's fiduciary duties as co-owner of Fat Cat.

(4) **Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases**—The New York appellate court is the only court where the Debtor may seek review of the NY Trial Court's decisions. "[T]he *Rooker-Feldman* doctrine prevents state court losers from seeking a review and rejection of a state court judgment in federal court,"[21] and this Court would likely be bound by the preclusive effect of the Judgment absent a reversal on appeal.

(5) **Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation**—Although this factor is framed in terms of a debtor's insurance carrier, in the instant case, another third party has assumed full financial responsibility for pursuing the appeal (the Debtor's mother).

(6) **Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question**—The Debtor is integrally involved in the Second Appeal.

(7) **Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties**—While the Second Appeal could impact the NY Judgment Creditors, it would not prejudice the interests of any other creditors or interested parties.

-17-

Given the circumstances of this case, the Court determines that the most important factors, not necessarily in this order, are (1) whether stay relief will interfere with the administration of the bankruptcy estate or cause undue delay; (2) any prejudice to creditors; (3) the policy in favor of deciding issues on the substantive merits; and (4) the Debtor's chance of success on the merits of the appeal, including this Court's reluctance to substitute its own judgment for that of the New York appellate court.[22] The Court will discuss each of these factors in turn.

First, stay relief will not interfere with the administration of the bankruptcy estate or cause undue delay. Prosecution of the Second Appeal will delay distributions to creditors, but the delay primarily will impact the parties to the appeal itself since the NY Judgment Creditors hold 99% of all pre-petition claims in the bankruptcy case. While the NY Judgment Creditors will have to wait until after the Second Appeal is decided to receive any distribution in the bankruptcy case, such delay is not unfair under the circumstances given no material prejudice to

_____

(8) **Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c)**—N/A.

(9) **Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)**—The Debtor's success in the Second Appeal would result in a reduction of the judgment against him. The Bechem Creditors have already attached the Debtor's Merrill Lynch Account.

(10) **The interest of judicial economy and the expeditious and economical determination of litigation for the parties**—While the Second Appeal extends the litigation between the Debtor and the NY Judgment Creditors, the Debtor's appeal rights would be completely foreclosed if stay relief were not granted.

(11) **Whether the foreign proceedings have progressed to the point where the parties are prepared for trial**—N/A.

(12) **The impact of the stay on the parties and the "balance of hurt"**—The NY Judgment Creditors will be no worse off than if the Debtor had not filed bankruptcy and had pursued his New York appeal. The Debtor has an opportunity to reduce the amount of the judgment against him.

[22] *See, e.g., In re Bridge*, 600 B.R. 98, 102-03 (Bankr. D.N.M. 2019) (citing *In re Crespin*, 581 B.R. 904, 908 (Bankr. D.N.M. 2018)) (considering delay as a factor); *In re United Imports, Inc.*, 203 B.R. 162, 166-67 (Bankr. D. Neb. 1996) (considering movant's chance of success on the merits).

-18-

other creditors from the delay and the interest of justice of an appellate decision on its merits to determine the amount to which the NY Judgment Creditors are entitled before they are paid.

Second, prosecution of the Second Appeal will not unduly prejudice creditors. Granting stay relief for the Debtor to pursue the Second Appeal will not cause the bankruptcy estate to incur any expenses in the appeal because the Debtor's mother is paying the legal fees for the Second Appeal. The main impact of the Second Appeal will be whether the New York appellate court upholds the Judgment in favor of the Bechem Creditors and the other NY Judgment Creditor. The NY Judgment Creditors, who hold 99% of all pre-petition claims in the bankruptcy case, are not legally prejudiced by allowing an appeal to determine the amount to which they are justly entitled before they receive distributions from the estate.

Third, public policy favors matters being decided on the merits rather than on procedural grounds. *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig*., 460 F.3d 1217, 1226 (9th Cir. 2006); *cf. Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006). This factor favors granting stay relief, so the New York appellate court may review the Judgment on the merits in the Second Appeal. The Second Appeal is the Debtor's only avenue to challenge the Judgment. This Court cannot conduct appellate review of a state court judgment under the *Rooker-Feldman* doctrine. As the Third Circuit Court of Appeals explained, in determining that the stay should have been lifted for "cause" to permit an appeal of a state court judgment to proceed,

> If the bankruptcy proceeding continues without modification of the stay, issue preclusion will prevent [the movant] from challenging the effect of the state court judgment in the bankruptcy court. It is settled law that issue [and claim] preclusion appl[y] to bankruptcy proceedings. . . . The bankruptcy court is also prohibited from reviewing the state court's judgment by the *Rooker-Feldman* doctrine, which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments. . . . As demonstrated, [the movant] cannot relitigate the adverse trial court judgment in bankruptcy court. If she is denied relief from the automatic stay, she will have no opportunity to challenge the adverse judgment before the bankruptcy proceedings are complete. If [the movant] is not

-19-

afforded an opportunity to pursue her appeal in state court, she will have no forum to litigate her cause. Accordingly, we believe it is necessary to lift the stay to permit prosecution of her appeal to the state appellate courts.

*Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (internal citations omitted); *cf. Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1075 (10th Cir. 2004) (providing that under the *Rooker-Feldman* doctrine, a lower federal court may not effectively act as an appellate court to review a state court decision). This principle is arguably even more important where, as here, it is the bankruptcy debtor who is seeking to have a judgment against him reduced.

Finally, for the reasons state above, this Court assesses that the Debtor has at least a reasonable possibility of prevailing on appeal. Under the circumstances of this case, the Court is reluctant to substitute its own judgment for that of the New York appellate court.

Having considered and weighed all the relevant factors, the Court determines that there is "cause" to modify the automatic stay to permit the Debtor to proceed with the Second Appeal in the New York appellate court.

<u>CONCLUSION</u>

For the reasons explained above, the Court will grant the Debtor's motion and modify the automatic stay to permit the Debtor to proceed with the Second Appeal in the New York appellate court. A separate order will issue.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: August 16, 2024

COPY TO:

Counsel for Debtor
James A. Askew
Askew & White, LLC
1122 Central Ave SW, Ste. 1
Albuquerque, NM 87102

Counsel for Bechem Creditors
Samuel I. Roybal
Walker & Associates, P.C.
500 Marquette NW, Suite 650
Albuquerque, NM 87102

-20-